Charles MILLER, Plaintiff-Appellant,

v.

ROWAN COMPANIES, INC. and Tri-State Oil Tool Industries, Inc., Defendants-Appellees.

No. 86–3129.

United States Court of Appeals, Fifth Circuit.

May 1, 1987.

Rehearing Denied June 2, 1987.

Camilo K. Salas, III, Robert E. Winn, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, La., Maurice Dantin, Dantin & Dantin, Columbia, Miss., for plaintiff-appellant.

Edward S. Johnson, Ronald A. Johnson, Johnson & McAlpine, New Orleans, La., for Rowan Companies, Inc.

William G. Tabb, III, New Orleans, La., for Tri-State Oil Tool Industries, Inc.

Before CLARK, Chief Judge, WISDOM and HIGGINBOTHAM, Circuit Judges.

WISDOM, Circuit Judge:

This appeal presents another variation of the riddle long familiar to this Court: When is an oil field worker, in this case a fishing tool supervisor, a seaman for purposes of the Jones Act?[1] Charles Miller, the fishing tool supervisor, was injured aboard a tender vessel tethered to an offshore platform. He brought a Jones Act claim against his employer, Tri-State Oil Tool Industries. After the jury returned a verdict in favor of Miller, the district court held that Miller was not a seaman and granted Tri-State's motion for a judgment *non obstante veredicto* and, alternatively, a new trial. Miller appeals the judgment n.o.v. on two grounds. First, the evidence was sufficient to support a jury finding of seaman status. Second, the district court erred in entering a judgment n.o.v. because Tri-State failed to move for a directed verdict at the close of all the evidence. Additionally, Miller appeals that portion of the judgment which awarded Tri-State reimbursement for compensation payments it had paid to Miller. We affirm the judgment on seaman status and vacate the judgment on reimbursement.

## I.

Charles Miller is a fishing tool supervisor for Tri-State Oil Tool Industries, an oilfield service company. His job is to retrieve drilling tools and broken pipe from the well hole, a job in the oil industry known as "fishing". Drilling contractors in need of fishing services subcontract with Tri-State. During the course of his employment with Tri-State, Miller was assigned to numerous drilling operations, both offshore and onshore.

In December of 1981, Tri-State assigned Miller to a drilling operation conducted by Rowan Industries on a fixed offshore platform. Rowan also operated the ROWAN TENDER III, the tender vessel assigned to the platform. The vessel served as an office, a galley, and a bunkhouse for the drilling crew and remained tethered to the platform. Miller ate and slept aboard the vessel. Although he worked primarily on the platform, he did do some incidental paper work and tool preparation on the vessel. On December 15, 1981, Miller was injured by a fall as he attempted to enter the vessel's quarters through a water-tight door.

Miller brought this suit against Tri-State and Rowan Industries to recover his damages. He asserted a claim against Tri-State under the Jones Act and a claim against Rowan for negligence and unseaworthiness under general maritime law. The suit was tried to a jury. After Miller presented his case-in-chief, both Tri-State and Rowan moved for directed verdicts on the issue of Miller's status as a seaman for purposes of his Jones Act and unseaworthiness claims. The trial judge took the motions under submission and ordered the trial to continue. Rowan presented three witnesses and then rested. Tri-State rested without presenting any evidence. A

---

1. *See, e.g., Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1068 (5th Cir.1986) (en banc) ("when is an offshore worker a 'seaman'"?); *Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 280 (5th Cir.1981) ("when is a structural welder a seaman?"); *Offshore Co. v. Robison*, 266 F.2d 769, 771 (5th Cir.1959) ("When is a roughneck a seaman?").

bench conference ensued at which Miller moved for a directed verdict on all issues and Rowan's counsel reurged its earlier motion for a directed verdict. The trial transcript does not indicate that Tri-State's counsel also renewed its motion for a directed verdict. The trial judge orally denied all motions for directed verdicts and submitted the case to the jury. The jury returned a verdict in favor of Miller on all his claims. The court entered judgment on the verdict and on the parties' stipulation that Miller was liable, in turn, for reimbursement of insurance payments.

On post-verdict motions, the trial judge granted Tri-State's motion for a judgment n.o.v., holding that the evidence did not support a jury finding that Miller was a seaman. The trial judge also granted Rowan a new trial. The trial judge denied, however, Miller's motions seeking prejudgment interest and modification of the judgment against him for reimbursement. Miller appealed. Before this appeal was argued, Miller and Rowan settled; we need decide, therefore, only the claims between Miller and Tri-State. Also, because we affirm the judgment n.o.v. in favor of Tri-State, we need not reach Miller's appeal from the denial of his motion for prejudgment interest.

## II.

■ Miller argues that the district court could not enter a judgment n.o.v. in favor of Tri-State because Tri-State failed to renew its motion for a directed verdict at the close of all the evidence. Rule 50(b) of the Federal Rules of Civil Procedure provides

that a judgment n.o.v. may be granted "[w]henever a motion for a directed verdict made at the close of all the evidence is denied or for any reason not granted." As we have interpreted this rule, a party who fails to renew his motion for a directed verdict at the close of all the evidence, absent special circumstances, waives his right to a judgment n.o.v.[2] Although the correct practice would have been for Tri-State to have renewed its motion after all the parties had rested their cases, its failure to do so, in the circumstances of this case, does not preclude it from seeking a judgment n.o.v.

Arguably, Tri-State did comply with the strict terms of Rule 50(b). After it moved for a directed verdict on the issue of seaman status, Tri-State rested without presenting any evidence. Tri-State's motion followed, therefore, the close of all the evidence concerning Miller's claim *against Tri-State.* The problem arose because Rowan later presented witnesses who testified concerning the negligence and unseaworthiness claims against it. Whether Rule 50(b) requires that a judgment n.o.v. be preceded by a directed verdict motion made at the close of all evidence concerning the claim against the moving party or at the close of all evidence presented by all the parties to the litigation is a question that the rule does not specifically answer.[3]

■ Even if Tri-State failed to comply with the strict terms of the rule, this case is one in which the liberal application of the rule is appropriate.[4] Whether technical noncompliance with Rule 50(b) precludes a

---

2. *Bohrer v. Hanes Corp.,* 715 F.2d 213, 216 (5th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984); *Quinn v. Southwest Wood Products, Inc.,* 597 F.2d 1018, 1024 (5th Cir.1979).

3. *See McKinnon v. City of Berwyn,* 750 F.2d 1383, 1388 (7th Cir.1984), expressing the view that Rule 50(b) does not adequately prescribe the procedure for multi-party cases.

4. This Circuit and others have rejected the rigid application of Rule 50(b) in favor of a more liberal approach. *E.g., Adjusters Replace-A-Car v. Agency Rent-A-Car, Inc.,* 735 F.2d 884, 888 n. 3 (5th Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 910, 83 L.Ed.2d 924 (1985); *Villanueva v.*

*McInnis,* 723 F.2d 414, 417–18 (5th Cir.1984); *Bohrer v. Hanes Corp.,* 715 F.2d 213, 216–17 (5th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984); *Quinn v. Southwest Wood Products, Inc.,* 597 F.2d 1018, 1025 (5th Cir.1979); *Beaumont v. Morgan,* 427 F.2d 667, 670 (1st Cir.), *cert. denied sub. nom. Beaumont v. Aussenheimer,* 400 U.S. 882, 91 S.Ct. 120, 27 L.Ed.2d 121 (1970); *Bonner v. Coughlin,* 657 F.2d 931, 938 (7th Cir.1981); *Halsell v. Kimberly-Clark Corp.,* 683 F.2d 285, 294 (8th Cir. 1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983); *Armstrong v. Federal Nat'l Mortgage Ass'n,* 796 F.2d 366, 370 (10th Cir.1986).

judgment n.o.v. "should be examined in the light of the accomplishment of its particular purposes as well as in the general context of securing a fair trial for all concerned in the quest for truth."[5] One purpose of Rule 50(b) is to ensure that the trial court is invited to reexamine only the question raised by the motion for a direct verdict—whether the evidence is sufficient as a matter of law—and not to reexamine the facts properly found by the jury.[6] If the court and counsel are adequately informed of the defendant's challenge, this purpose is served.[7] When Tri-State made its original motion, the trial court reserved its ruling until after the trial was completed. After Rowan presented its witnesses, it reurged its earlier motion on the issue of seaman status, which also had been taken under submission. When Tri-State raised its post-verdict motions, neither the trial judge nor Miller raised any objection to Tri-State's failure to renew its motion formally. Because the court and the parties apparently had considered the issue open throughout the litigation, renewal of Tri-State's motion would have furthered no purpose.[8]

▪▪▪ Another aim of the rule is to avoid making a trap of the judgment n.o.v. when the defendant's nonrenewal is designed to avoid pointing out the defects in the plaintiff's proof, especially defects exposed by the defendant's case-in-chief, which the plaintiff might cure before the case is submitted to the jury.[9] There was no possibility of a trap in this case because the trial court's grant of a judgment n.o.v. did not hinge in any way on evidence introduced *after* Tri-State made its original motion.[10] Tri-State introduced no evidence. Rowan did present three witnesses, but none of them testified to any facts concerning Miller's status as a seaman. We follow the approach adopted in several previous cases: when the trial court reserves its ruling on the defendant's motion for a directed verdict and the only evidence introduced after the motion is not related to the motion, the defendant's failure to renew his motion should not preclude a judgment n.o.v. in his favor.[11]

### III

The district court's decision is proper only if "there is no reasonable evidentiary basis to support a jury finding that the injured person is a seaman ... under the Jones Act."[12] For almost thirty years, this Circuit has followed the test for seaman status articulated in *Offshore Co. v. Robison:*

---

5. *Bohrer v. Hanes Corp.*, 715 F.2d 213, 217 (5th Cir.1983) (quoting *Bonner v. Coughlin*, 657 F.2d 931, 939 (7th Cir.1981)), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984).

6. *Id.* at 216.

7. *Adjusters Replace-A-Car v. Agency Rent-A-Car, Inc.*, 735 F.2d 884, 888 n. 3 (5th Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 910, 83 L.Ed.2d 924 (1985).

8. *Armstrong v. Federal Nat'l Mortgage Ass'n*, 796 F.2d 366, 370 (10th Cir.1986) (citing *Bohrer v. Hanes Corp.*, 715 F.2d 213, 216–17 (5th Cir. 1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984)).

9. *Bohrer v. Hanes Corp.*, 715 F.2d 213, 216 (5th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984); *Ohio-Sealy Mattress Mfg. v. Sealy, Inc.*, 585 F.2d 821, 825 (7th Cir.1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979).

10. *See Beaumont v. Morgan*, 427 F.2d 667, 670 (1st Cir.), *cert. denied sub. nom. Beaumont v.*

*Aussenheimer*, 400 U.S. 882, 91 S.Ct. 120, 27 L.Ed.2d 121 (1970); *Ohio-Sealy Mattress Mfg. v. Sealy, Inc.*, 585 F.2d 821, 825 (7th Cir.1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979); *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 294 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983); *Armstrong v. Federal Nat'l Mortgage Ass'n*, 796 F.2d 366, 370 (10th Cir.1986).

11. *Beaumont v. Morgan*, 427 F.2d 667, 670 (1st Cir.), *cert. denied sub. nom. Beaumont v. Aussenheimer*, 400 U.S. 882, 91 S.Ct. 120, 27 L.Ed.2d 121 (1970); *Bayamon Thom McAn, Inc. v. Miranda*, 409 F.2d 968, 971–72 (1st Cir.1969); *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 294 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983); *Armstrong v. Federal Nat'l Mortgage Ass'n*, 796 F.2d 366, 370 (10th Cir.1986).

12. *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1074 (5th Cir.1986) (en banc) (quoting *Guidry v. Continental Oil Co.*, 640 F.2d 523, 529 (5th Cir.), *cert. denied*, 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981)).

[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.[13]

Recently, this Court reaffirmed the continuing viability of the *Robison* test, with some qualifications, in its en banc decision in *Barrett v. Chevron, U.S.A., Inc.*[14]

The party claiming seaman status must prove both elements of the *Robison* test. We need not consider in detail whether Miller satisfied the second requirement. His duties while aboard the platform and tender clearly contributed to the mission of the tender—drilling for oil.[15] Nevertheless, we agree with the district court because Miller did not comply with the first element of *Robison.* He failed to present a sufficient evidentiary basis for the jury to find that he was permanently assigned to the tender vessel or performed a substantial part of his work on the vessel.

This Court has been confronted with several cases involving offshore oilfield workers assigned to drilling operations involving a fixed platform supported by a tender vessel. In *Longmire v. Sea Drilling Corp.*,[16] the panel held that a roughneck, who worked primarily on a fixed platform, was not a seaman on the platform's tender vessel, even though he ate and slept on the vessel, performed some tasks on the vessel, and was engaged in a traditional maritime task—stowing anchor chains—at the time of his injury. The panel ruled, as a matter of law, that a rig worker, whose primary duties were on a fixed platform and whose duties on the platform's tender vessel were not regular and continuous, could not be found to be permanently assigned to the tender vessel or to have performed a substantial part of his work there.[17] In *Barrett,* a welder, assigned to an offshore oil field, was injured while repairing a small platform from a derrick barge. The worker's duties consisted of repairing and renovating many of the several platforms and structures located in the field. Most of his work was done aboard fixed platforms, but sometimes his work was done from barges

---

**13.** *Offshore v. Robison,* 266 F.2d 769, 779 (5th Cir.1959).

**14.** 781 F.2d 1067, 1074 (5th Cir.1986) (en banc). *Barrett* also addressed the proper roles of the jury and the court in determining seaman status:

> [T]he status determination as a whole, is an inherently factual question, and as our cases since *Robison* make clear, it is generally a question for the fact-finder. Our cases also make clear, however, that status may be determined by summary judgment in the appropriate situation. Thus, we have held that "where the facts establish *beyond question as a matter of law* [the lack of seaman status] ... a court ... may, in the proper case, hold that there is no reasonable evidentiary basis to support a jury finding that the injured person is a seaman ... under the Jones Act.

*Id.* at 1074 (quoting *Guidry v. Continental Oil Co.,* 640 F.2d 523, 529 (5th Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981)) (emphasis and omission in *Barrett* ).

**15.** *Id.* at 1073.

**16.** 610 F.2d 1342 (5th Cir.1980).

**17.** *Id.* at 1346–47. The same result was reached on similiar facts in *Golden v. Rowan Companies,* 778 F.2d 1022, 1025–26 (5th Cir.1985) and *Keener v. Transworld Drilling Co.,* 468 F.2d 729, 731–32 (5th Cir.1972). Other cases involving platforms with tender vessels, however, have upheld a finding of seaman status. *Parks v. Dowell Div. of Dow Chemical Corp.,* 712 F.2d 154, 158 (5th Cir.1983); *Kimble v. Noble Drilling Corp.,* 416 F.2d 847, 848–49 (5th Cir.1969), *cert. denied,* 397 U.S. 918, 90 S.Ct. 924, 25 L.Ed.2d 99 (1970). Both *Parks* and *Kimble* limited their inquiry to the substantiality of the injured worker's connection with the tender vessel in the context of the worker's current assignment when injured. In contrast, *Longmire* held that the worker's connection with the vessel must be substantial "in the context of his entire employment", not just any particular assignment. *Longmire,* 610 F.2d at 1347. This inconsistency in approaches was resolved in *Barrett,* which adopted the approach of *Longmire. See* text accompanying notes 18–19.

when the structure that he was repairing was too small to support the entire work crew and their equipment. Although Barrett spent only twenty to thirty percent of his time working on vessels, at the time of his accident he had spent most of his fourteen-day hitch working aboard the derrick barge on which he was injured. Holding that Barrett failed to satisfy the first prong of the *Robison* test, as a matter of law, the Court quoted the following language from *Longmire:*

> When seaman's status is sought on the theory that the claimant has performed a substantial part of his work on the vessel, however, the circumstances of the claimant's injury cannot be viewed in isolation but must be considered in relation to his other regular duties. We do not preclude the possibility that an informal and temporary change of duties, though not tantamount to permanent assignment to a vessel, may be sufficient to effect an immediate change in the worker's status to that of a seaman if the change of duties involves work that would normally be done by a member of a ship's crew and it can reasonably be said that, taking into consideration all the circumstances of his employment, the change involves a regular and continuous, rather than intermittent, commitment of the worker's labor to the "function of the vessel, its mission, its operation, or its welfare." What is to be avoided is engrafting upon the statutory classification of a "seaman" a judicial gloss so protean, elusive, or arbitrary as to permit a worker to walk into and out of coverage in the course of his regular duties.[18]

The *Barrett* Court continued: "Thus, if the employee's regularly assigned duties require him to divide his time between vessel and land (or platform) his status as a crew member is determined 'in the context of his entire employment' with his current employer." [19]

In the light of *Barrett*, we turn to the evidence concerning Miller's employment with Tri-State and his assignment to the tender vessel. The evidence is undisputed. Miller was assigned to supply fishing services for Rowan's drilling operations on the fixed platform. During this particular assignment, Miller performed most of his work on the platform. His work on the tender vessel, some paper work and tool preparation, was certainly not a substantial portion of his work while at this location. His assignment was to the platform, where the fishing operations were actually conducted, not the tender vessel. Like the worker in *Longmire*, his job was primarily on the rig, although he ate and slept on the tender and did some incidental work there. Moreover, viewing this particular assignment "in the context of his entire employment" with Tri-State, we must hold that Miller did not perform a substantial portion of his work upon a vessel. From 1976 to the date of the accident in 1981, Miller worked on platforms with tender vessels only eighteen days. In each of these six years, the days Miller spent working from tender vessels never exceeded five percent of his total working days in the field for the year. Nor was there any evidence that this particular assignment was a significant change in the nature of Miller's employment, one that would require Miller to spend a substantial portion of his time working aboard a vessel.

District Judge Charles Schwartz, Jr. pointed out that, on the facts, *Longmire* was a closer case than this case. We agree and add only that the same is true about *Barrett*. Both *Barrett* and *Longmire* involved workers who were permanently assigned to fixed platforms, which were attended by the vessels of the platform operators. Here, Miller was not permanently assigned to the platform that was attended by the ROWAN TENDER III; nor did he have a substantial connection to a particular vessel or an identifiable fleet of vessels.[20] Over the course of his employment,

---

**18.** 781 F.2d at 1075 (quoting *Longmire,* 610 F.2d at 1347).

**19.** *Id.* (quoting *Longmire,* 610 F.2d at 1347).

**20.** *Id.* at 1074; *Guidry v. Continental Oil Co.,* 640 F.2d 523, 529 (5th Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981).

Miller was sent out to numerous locations both onshore and offshore, on both fixed and mobile rigs, and for numerous drilling contractors. There was no evidence that Miller regularly worked on the ROWAN TENDER III, or on other tenders in Rowan's fleet. A primarily land-based worker who is randomly assigned to unrelated vessels to perform essentially nonmaritime tasks does not meet the *Robison* test because he does not have a substantially regular and continuous connection with a vessel or a specific group of vessels.[21]

## IV.

Finally, Miller contests that portion of the judgment which awarded Tri-State reimbursement for the insurance payments it had earlier paid to Miller. The parties had stipulated that Tri-State's insurer had paid Miller $73,470.61 in Longshoremen's and Harbor Workers' Compensation Act benefits ($59,122.40 in disability compensation and $14,348.21 in medical benefits). The parties further agreed that the trial judge should take this amount into consideration when rendering the final judgment after the jury's verdict. After the jury verdict in favor of Miller, the judge entered his judgments, including a judgment in favor of Tri-State against Miller in the amount of $73,470.61. Miller now complains because he is left with a judgment against him for $73,470.61. He argues that the parties agreed only to a *credit* of that amount, which would be deducted from the amount of any judgment against Tri-State.

At the time the trial court entered its original judgments, the judgment against Miller was proper. Tri-State, through its insurer, had already partially compensated Miller. Tri-State was entitled to a credit for that amount. Whether the credit was recognized as a reduction in the judgment against Tri-State or as a separate judgment

against Miller made no difference, because the net effect to Miller would be the same.

■ The trial court later held, however, that Tri-State is not liable to Miller under the Jones Act. That holding relegates Miller to his claims against Tri-State under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA). Tri-State's insurer, however, had already paid Miller his benefits under the Act. The parties did not agree, nor do we see any reason for holding, that those payments were not properly owed to Miller. Miller is not personally liable, therefore, to reimburse Tri-State for the LHWCA benefits that he received.

Nevertheless, Tri-State is entitled to recover its LHWCA payments from Miller *out of the amount that Miller may recover from Rowan.* Section 33 of the LHWCA provides that an employer who has paid benefits pursuant to a formal compensation award is subrogated to the employee's rights against third parties.[22] Courts have recognized that even if LHWCA compensation has been voluntarily paid, the employer has a right to recover his payments by a "lien" on the amount recovered by the employee, whether by judgment or settlement, from a third party who is also liable for the employee's injury.[23] Of course, if the amount recovered by the employee from the third party is less than his compensation benefits, his employer cannot hold him liable for the balance.[24] The trial court's judgment is consistent with these rules. It awards Tri-State $73,470.61 "to be paid in preference and priority *out of the sum awarded to Charles Miller,* together with legal interest from the date of judgment". (emphasis added).

■ Although Miller concedes that Tri-State had this limited right of indemni-

**21.** *Guidry v. Continental Oil Co.,* 640 F.2d 523, 529 (5th Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981); *see also Barrett,* 781 F.2d at 1073–75 & n. 13.

**22.** 33 U.S.C. § 933(b) (1982).

**23.** *Bloomer v. Liberty Mutual Ins. Co.,* 445 U.S. 74, 75, 100 S.Ct. 925, 926, 63 L.Ed.2d 215 (1980);

*Albert v. Paulo,* 552 F.2d 1139, 1140 (5th Cir. 1977); *Allen v. Texaco, Inc.,* 510 F.2d 977, 979–80 (5th Cir.1975); *Davillier v. Cavn Venezuelan Line,* 407 F.Supp. 1234, 1236–38 (E.D.La.1976).

**24.** *Davillier v. Cavn Venezuelan Line,* 407 F.Supp. 1234, 1238 (E.D.La.1976).

ty, he argues that Tri-State failed to ask for anything more than a credit and, therefore, is now precluded from seeking its indemnification rights. We do not agree. The employer need not make a formal request for intervention to recover his LHWCA payments from his employee's recovery against the third party.[25] Moreover, Miller consented to a judgment that reflected Tri-State's indemnification rights. In a letter to the trial judge informing him of the parties' agreement on certain matters concerning the compensation payments, Miller's counsel wrote: "Your recollection is correct that we on behalf of Mr. Miller agreed that if there had been a finding that Mr. Miller was not a Jones Act seaman and there was a judgment only against the ship owner [Rowan], then the judgment could take into account the longshoremen's benefits paid even though no formal intervention had been filed."

Although we find that the district court's judgment was proper, it no longer has effect. The judgment contemplated an award in Miller's favor against Rowan, from which Tri-State could recover its compensation payments. The trial court later vacated its judgment against Rowan, however, in granting it a new trial. Tri-State's judgment against Miller was, in effect, suspended pending the new trial against Rowan. We have been informed, however, that this trial will not occur; Miller and Rowan settled their dispute shortly before this ap-

peal was argued. Although we have recognized that Tri-State has a claim against the proceeds of that settlement, we decline to issue an order to that effect. The extent of Tri-State's rights against the settlement proceeds depends on the amount and terms of that settlement, which are not before us.[26] We, therefore, vacate the judgment of the district court awarding reimbursement to Tri-State without prejudice to Tri-State's right to return to the district court and seek recovery from Miller's settlement with Rowan.[27]

## V.

At this juncture in the jurisprudence of our Circuit, particularly in the light of *Barrett*, we are bound to affirm the district court's holding that Miller was not a Jones Act seaman.

We are not persuaded to avoid the substantive issues of this case by reversing the district court on the narrow, technical grounds of Rule 50(b). The first rule of the Federal Rules of Civil Procedure admonishes us to interpret the remainder liberally so that the broad aims of justice and efficiency that they seek to serve are achieved.[28] We follow the holdings of numerous cases in this Circuit and others in excusing Tri-State's failure to renew in the circumstances of this case.

We also uphold the district court's decision to recognize Tri-State's right to recover its LHWCA payments from Miller's re-

**25.** *American Home Assurance Co. v. Aldredge,* 501 F.Supp. 266, 269 (E.D.La.1980); *Russo v. Flota Mercante Grancolombiana,* 303 F.Supp. 1404, 1406 (S.D.N.Y.1969).

**26.** For some of the problems entailed in allocating the employee's recovery, see *Ochoa v. Employers Nat'l Ins. Co.,* 724 F.2d 1171 (5th Cir.), *vacated,* 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984), *on remand,* 754 F.2d 1196 (5th Cir. 1985) (allocation of attorney's fees and litigation costs); *Peters v. Speeflo Mfg. Corp.,* 586 F.Supp. 1390 (E.D.La.1984) (effect of settlement that purports to negate employer's indemnification rights).

**27.** Miller further argues that the most Tri-State can recover is $52,097.40 ($73,470.61 total benefits paid less $14,348.21 in medical benefits allegedly not claimed at trial and $7,035.00 in maintenance and cure owed by Tri-State and

stipulated to by the parties). The district court awarded Tri-State the entire amount of $73,-470.61 and we do not disagree with that amount. First, Tri-State is entitled to recover its medical payments out of Miller's settlement with Rowan, *Terry v. Rebstock Drilling Co.,* 601 F.Supp. 820, 824 (E.D.La.1985), unless for some reason the settlement excludes that portion of damages, a question we leave for the district court. Second, Tri-State is not liable for maintenance and cure because Miller was found not to be a seaman. *Hall v. Diamond M Co.,* 732 F.2d 1246, 1248 (5th Cir.1984). Tri-State did not stipulate that it owed maintenance and cure to Miller, it only stipulated to the amount that would be due if the court later held Miller to be a seaman.

**28.** Fed.R.Civ.P. 1; *Bohrer v. Hanes Corp.,* 715 F.2d 213, 217 (5th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984).

covery against Rowan. For the reasons we have given, however, we must vacate that judgment without prejudice to Tri-State.

The judgment of the district court is AFFIRMED in part and VACATED in part.