Jeffrey Paul BAILEY

v.

**GLOBAL MARINE, INC., Gator Hawk, Inc. and Champlin Petroleum, Inc.**

Civ. A. No. H–84–1994.

United States District Court,
S.D. Texas,
Houston Division.

Feb. 28, 1989.

Jim Tatum, Jim Tatum and Associates, Houston, Tex., for plaintiff.

Francis I. Spagnoletti, Vinson & Elkins, and Robert Arredondo, Butler & Binion, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

SINGLETON, District Judge.

The matter now before this Court is Gator Hawk, Inc.'s Motion to Reconsider Motion for Summary Judgment.

### I. INTRODUCTION

Plaintiff, Jeffrey Paul Bailey, filed suit for damages allegedly sustained while working for Gator Hawk, Inc. (Gator Hawk), which had contracted with Champlin Petroleum Company (Champlin) to perform certain wellpipe testing services at Champlin's drill site off the coast of California.

Gator Hawk has moved this Court to enter summary judgment, 1) dismissing the claims made by Plaintiff under the Jones Act, 46 U.S.C.App. § 688, for lack of Jones Act seaman status, and 2) limiting Plaintiff's recovery against Gator Hawk to that which is available under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, and 3) dismissing the cross-claim filed by Defendant Champlin, on the grounds that the relief of indemnity and contribution sought in the cross-claim is barred by §§ 5(a) and 5(b) of the LHWCA. 33 U.S.C. §§ 905(a) and (b).

On August 30, 1988, this Court denied Gator Hawk's Motion for Summary Judgment. On that same date, at a conference in chambers attended by the attorneys in this case, counsel for Gator Hawk was granted leave to re-urge its motion by submitting a Motion to Reconsider outlining relevant law on the question of Plaintiff's Jones Act seaman status. In accordance with the Court's instructions, Gator Hawk filed its Motion to Reconsider Motion for Summary Judgment, which is now at issue.

### II. FACTUAL BACKGROUND

This litigation arises out of personal injuries allegedly sustained by the Plaintiff, Jeffrey Paul Bailey, on October 24, 1983. At that time the Plaintiff and a co-employee were working for Gator Hawk, which

had contracted with Champlin to perform certain wellpipe testing services at Champlin's drill site off the coast of California, on board the D/V GLOMAR ATLANTIC. The D/V GLOMAR ATLANTIC was owned and/or operated by Global Marine Deepwater Drilling, Inc. (Global Marine) and its affiliated and subsidiary companies.

The Plaintiff was transported offshore California to the D/V GLOMAR ATLANTIC by helicopter. The equipment to be used by Gator Hawk and the Plaintiff was previously transported offshore to the vessel. The Plaintiff injured his back while preparing his equipment to perform the services contracted by Champlin.

Gator Hawk provides to the oil exploration and production industry such oilfield services as pressure testing drill pipe and casing. It provides a variety of oilfield services to both onshore and offshore drilling operators. The location of the site for performance of services by Gator Hawk's employees, whether on land or offshore, is wholly determined by the needs of the particular Gator Hawk customer.

At the time of his injury Plaintiff was working in the external division of Gator Hawk providing technical pressure testing services for Gator Hawk's customers. Plaintiff was assigned to Gator Hawk's headquarters in Houston, where he reported to the external division to receive his instructions for work on a particular job. The vast majority of the jobs performed by the Plaintiff required him to work at land-based drilling sites or on fixed offshore platforms. Occasionally, due to the needs of a particular customer of Gator Hawk, he would be assigned to perform pressure testing services on board a vessel. Plaintiff was never permanently assigned to any offshore drilling structure for longer than it took to complete the particular testing operation. The duration of this job was to be "a couple of days". Plaintiff was not permanently assigned to any particular vessel or fleet of vessels, nor did he perform a substantial amount of his work on the D/V GLOMAR ATLANTIC or any other vessel or fleet of vessels.

Gator Hawk's affidavit in support of its Motion for Summary Judgement states that Plaintiff spent in excess of ninety percent (90%) of his time on land-based jobs or on fixed offshore platforms while employed by Gator Hawk. Less than ten percent (10%) of his time was spent on vessels defined as jack-up rigs, semi-submersibles, or traditional ship shaped drilling vessels such as the D/V GLOMAR ATLANTIC.

While employed by Gator Hawk, Plaintiff worked for approximately thirty-five (35) different customer companies which had requested the services of Gator Hawk. The August 24, 1983 job was the first that he had performed for Champlin through Gator Hawk. It was also the first time that he was employed on the D/V GLOMAR ATLANTIC.

## III. DISCUSSION

### 1. *Jones Act Seaman Status*

■ Gator Hawk has demonstrated that Plaintiff was employed as a service technician and performed pressure testing of pipe and oilfield casing on land, on offshore platforms and only occasionally on vessels, and that while employed by Gator Hawk, Plaintiff spent less than ten percent (10%) of his time on vessels. Furthermore, Gator Hawk has demonstrated that while Plaintiff was in its employ, Plaintiff worked for more than thirty-five customer companies and was never permanently assigned to any particular customer or any customer's vessel or fleet of vessels. In addition, Plaintiff and all other employees of Gator Hawk who worked as service technicians were assigned to customers randomly on the basis of need and availability.

Based on the above-described nature of Plaintiff's employment, this Court is of the opinion that there exists no evidentiary basis to support a jury finding that Plaintiff was a seaman under the Jones Act. In this regard, the Fifth Circuit Court of Appeals holdings in *Offshore Company v. Robison*, 266 F.2d 769 (5th Cir.1959) and its progeny are controlling. In *Robison* the Fifth Circuit held that in order to qualify as a seaman under the Jones Act, a worker must satisfy each of the following criteria:

(1) The worker must have been permanently assigned to a vessel or have performed a substantial part of his work on the vessel; *and*

(2) The capacity in which the worker was employed or the duties which he performed must have contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

*Id.* at 779.

Plaintiff performed less than ten percent (10%) of his work on vessels and was never permanently assigned to any vessel or identifiable fleet of vessels. Thus, the first *Robison* requirement that a worker must have performed a substantial part of his work on a vessel, or have a significant connection with a vessel or identifiable fleet of vessels is not met. Therefore, this court will enter summary judgment in favor of Gator Hawk on the issue of Jones Act seaman status.

The Fifth Circuit of Appeals has handed down a series of decisions which leaves no room for doubt that there is no evidentiary basis to support a jury finding in this case that Plaintiff is a seaman under the Jones Act. For example, in *Barrett v. Chevron, USA, Inc.*, 781 F.2d 1067 (5th Cir.1986 en banc), the Court addressed the *Robison* requirement that a seaman perform a substantial portion of his duties aboard a vessel or fleet of vessels. The *Barrett* case involved a plaintiff who worked as a welder's helper for approximately one year before his injury and spent from twenty to thirty percent (20 to 30%) of his time working aboard vessels. However, during the eight days immediately before his injury, plaintiff spent as much as seventy percent (70%) of his time aboard a particular vessel. The Court placed particular emphasis on the percentage of total employment time that the plaintiff performed work on vessels and stated:

If [plaintiff] was entitled to have his status decided on the basis of his work during the eight days immediately before

his accident, the district court might properly have concluded that he was a member of the crew of a vessel or, indeed, as we have already indicated, that he was not. On the other hand, if the district court was required to consider [plaintiff's] vessel-related work during his entire one-year assignment as a welder's helper ... the record does not support a finding that he was a crew member.

*Id.* at 1074–75. The *Barrett* Court went on to hold that because plaintiff performed no more than twenty to thirty percent (20 to 30%) of his work on vessels, he did not perform a substantial portion of his work aboard a vessel or fleet of vessels; therefore, he failed to establish that he was a member of the crew of a vessel. *Id.* at 1076.

Similarly, in *Lormand v. Superior Oil Co.*, 845 F.2d 536 (5th Cir.1987), the district court's entry of summary judgment in favor of the defendant on the issue of seaman status was affirmed. The *Lormand* court noted the close parallel between the facts before it and the facts in *Barrett v. Chevron, USA, Inc., supra,* and concluded:

Like Barrett, [plaintiff] did welding work pursuant to his employer's contract for maintenance and repair services on fixed platforms owned by an oil company ... Over the course of their employment, both [plaintiff] and Barrett had been assigned to work on several different platforms. [Plaintiff's] latest assignment involved substantial work aboard a vessel, as did Barrett's, but [plaintiff's] job duties as a welder remained essentially unchanged. Hence, like Barrett, [plaintiff] was not entitled to have the substantiality of his work aboard vessels assessed only from the duration of his latest specific work assignment.

Considered, as it must be, in the context of the entire thirty-four-month period of this employment by IMM, [plaintiff] performed only fourteen percent of his work activity aboard vessels. Since [plaintiff] spent proportionally even less time working on a vessel than did Barrett, our decision in *Barrett* compels us

to agree with the district court that [plaintiff] presented insufficient evidence to support submission of the question of his status as a seaman to the jury. We therefore affirm the district court's summary judgment against [plaintiff] on the seaman status issue.

*Id.* at 541.

In *Miller v. Rowan Companies, Inc.,* 815 F.2d 1021 (5th Cir.1987), the Court addressed a situation where a maritime worker's time spent on vessels never exceeded five percent (5%) of his total working days. *Id.* at 1027. The plaintiff in *Miller* was assigned to provide fishing services on defendant's drilling operations on fixed platforms; however, a small portion of plaintiff's work was performed on a tender vessel tethered to an offshore platform. The plaintiff was injured aboard the vessel and brought a Jones Act claim against his employer. Affirming the trial court's granting of the employer's motion for judgment n.o.v. on the grounds that the plaintiff failed to present a sufficient evidentiary basis of the jury to find that he was permanently assigned to the tender vessel or performed a substantial part of his work on the vessel. The Court stated:

A primarily land-based worker who is randomly assigned to unrelated vessels to perform essentially non-maritime tasks does not meet the *Robison* test because he does not have a substantially regular and continuous connection with a vessel or a specific group of vessels.

*Id.* at 1028. *See also Pizzitolo v. Electro–Coal Transfer Corp.,* 812 F.2d 977 (5th Cir.1987) *cert. denied,* — U.S. —, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988) (25% of work time aboard vessels was not a substantial portion of work time); *Ketnor v. Automatic Power, Inc.,* 850 F.2d 236 (5th Cir.1988) (plaintiff was not "seaman" where 25% of work time was on vessels and activity did not contribute to function of vessel).

As indicated by its decisions in *Barrett, Lormand,* and *Miller,* the Fifth Circuit places special significance on the percentage of total work time that a maritime worker spends on a vessel in determining whether the worker is properly afforded seaman status. Indeed, it was this percentage factor that formed the basis of the Court's opinion in *Lormand* (lesser percentage than in *Barrett* compelled denial of seaman status) 845 F.2d at 541. In the instant case, plaintiff's having spent less than ten percent (10%) of his work time aboard vessels mandates the entry of summary judgment on the question of seaman status.

Recent Fifth Circuit opinions dictate the same result because Plaintiff's low percentage of work time on vessels was done on board vessels owned by thirty-five (35) customer companies of Gator Hawk. The Fifth Circuit decisions are clear that under such circumstances, Plaintiff cannot establish the connexity with a vessel or identifiable fleet of vessels which is prerequisite to seaman status.

For example, in *Langston v. Schlumberger Offshore Services, Inc.,* 809 F.2d 1192 (5th Cir.1987), the Court addressed a factual situation similar to the one at issue here. The plaintiff in *Langston* was employed as wireline operator whose duties involved the retrieval of geological information from partially drilled oil wells. From the time she began her job assignment to the time of her accident, the plaintiff performed approximately thirty-two percent (32%) of her work on fifteen (15) different vessels owned by ten (10) unrelated owners. The Court held that because the group of vessels that the plaintiff worked aboard did not qualify as a fleet of vessels, the district court properly granted summary judgment on the grounds that plaintiff was not a seaman, but rather a maritime worker covered by the LHWCA. *Id.* at 1193–94.

Similarly, in *Lirette v. N.L. Sperry Sun, Inc.,* 831 F.2d 554 (5th Cir.1987), the district court's granting of summary judgment in favor of the defendant employer was affirmed. The plaintiff in *Lirette* had spent seventy-five to eighty percent (75 to 80%) of his time offshore working on special purpose drilling rigs. During his four years of employment, the plaintiff worked for twenty-three (23) different companies aboard movable rigs. Each work assign-

ment lasted between one (1) and fifteen (15) days. *Id.* at 555. In holding that there was no evidence supporting the requisites of seaman status, the Court stated as follows:

> This circuit has recently considered whether a worker who performs jobs aboard several different drilling rigs owned by different companies is assigned to an identifiable fleet of vessels within the meaning of the Jones Act. In *Langston v. Schlumberger Offshore Services, Inc.,* 809 F2d 1192 (5th Cir. 1987), we held that wireline operator who had performed jobs for ten unrelated owners aboard fifteen distinct vessels was not a seaman for Jones Act purposes because the "evidence [did] not suggest that these vessels were commonly controlled or had any other nexus that would support a finding that they were a fleet." *Langston,* 809 F.2d at 1194.

> These decisions control [plaintiff's] appeal. [Plaintiff] was not a Jones Act seaman because the twenty-three special purpose drilling rigs he worked aboard were not under the common ownership or control of his employer nor did they share a nexus which would support a finding that they were a fleet.

*Id.* at 556.

In holding that the absence of evidence of common ownership or control of the vessels which the plaintiff worked on precluded a finding of seaman status, the *Lirette* court emphasized that "the distinction between seaman and transitory maritime workers is fundamental and may not be blurred." *Id.* at 557. Thus, the order of the district court dismissing the plaintiff's Jones Act claims and reserving his LHWCA claims was affirmed. *Id.*

The same result was reached in *Ardleigh v. Schlumberger, Ltd.,* 832 F.2d 933 (5th Cir.1987), the Fifth Circuit affirmed the district court's dismissal of a Jones Act claim on the grounds that the plaintiff did not qualify as a Jones Act seaman. In *Ardleigh,* the plaintiff worked under a rotation system for wireline crews on any one of 140 vessels and 67 platforms. In the course of his forty missions, the plaintiff worked on thirty different vessels with vessel work accounting for nearly seventy percent of his offshore time. The Court held that the plaintiff was not a seaman because he was not permanently attached to nor did he perform a substantial part of his work on an identifiable group or fleet of vessels. *Id.* at 934.

The above-referenced cases demonstrate the recent efforts by the Fifth Circuit Court of Appeals to lend some degree of predictability to the determination of seaman status in a given case. Particularly evident is the significance that the Court places on the percentage of total work time that a maritime worker spends on a vessel or fleet of vessels. Indeed, in none of these cases did the Court determine seaman status to exist in situations where a worker spent less than twenty to thirty percent (20 to 30%) of time aboard vessels. Thus, it is clear in the instant case that Plaintiff's having spent less than ten percent (10%) of his time working aboard vessels mandates summary judgment in favor of Gator Hawk on this issue. Furthermore, as demonstrated by the above-cited cases, the fact that Plaintiff's having worked onboard vessels owned by thirty-five (35) different customer companies, precludes a finding that Plaintiff was permanently attached or performed a substantial part of his work aboard an identifiable fleet of vessels.

2. *Plaintiff's Status under the "LHWCA"*

■ Defendant Gator Hawk has also moved to limit Plaintiff's recovery to that which is available under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.*

The LHWCA provides for compensation for the death or disability of any person engaged in "maritime employment," § 902(3), if the disability or death results from an injury incurred upon the navigable waters of the United States or any adjoining pier or other area customarily used by an employer in loading, unloading, repairing, or building a vessel. *Id.* § 903(a). Thus, a worker claiming under the

240

LHWCA must satisfy both a "status" and "situs" test. *P.C. Pfeiffer Company, Inc. v. Ford,* 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979); *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977).

Gator Hawk asserts that under the Fifth Circuit rulings in *Pippen* and *Boudreaux,* as well as the Supreme Court's *Perini North River Associates* decision, Plaintiff was engaged in "maritime employment" within the meaning of the LHWCA. *See Pippen v. Shell Oil Co.,* 661 F.2d 378 (5th Cir.1981); *Boudreaux v. American Workover, Inc.,* 680 F.2d 1034 (5th Cir.1982); *Director, Office of Worker's Compensation Programs v. Perini North River Associates,* 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983). This Court disagrees.

In the cases cited by Gator Hawk, the Fifth Circuit expansively construed the definition of "maritime employment" to give a plaintiff "status" under the LHWCA. Reliance on these cases to support "status" under the LHWCA is misplaced in light of the Supreme Court's recent decision in *Herb's Welding v. Gray,* 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985).

In that case the Supreme Court specifically disapproved of the Fifth Circuit's liberal construction of "status" when relying directly on the LHWCA. The Court held that the purpose of the LHWCA is to "cover those workers on the situs who are involved in the essential elements of loading and unloading; it is 'clear that persons who are on the situs but not engaged in the overall process of loading or unloading vessels are not covered.'" *Id.* at 423, 105 S.Ct. at 1427. As a result, the Court held that a plaintiff who was a welder working on offshore oil and gas pipelines did not fall within the definition of "maritime employment", and thus did not qualify for benefits under the LHWCA.

It is important to note, however, that in the *Herb's Welding* decision, the Supreme Court limited its opinion to whether the plaintiff was entitled to LHWCA benefits when relying directly on the LHWCA. Because the Fifth Circuit decided the status issue by relying directly on the LHWCA,

the Supreme Court expressed no opinion on the plaintiff's argument that irrespective of the nature of his employment, he was covered by virtue of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* ("Lands Act").

The Lands Act grants LHWCA benefits to offshore oil workers injured on the Outer Continental Shelf. The relevant section provides:

With respect to disability or death of an employee resulting from any injury occurring as the result of operations conducted on the Outer Continental Shelf for the purpose of exploring for, developing, removing or transporting by pipeline the natural resources, or involving rights to the natural resources, of the subsoil and seabed of the outer Continental Shelf, compensation shall be payable under the provisions of the Longshoremen's and Harbor Workers' Compensation Act.

43 U.S.C. § 1333(b)

The Plaintiff in the case at bar may be covered by the LHWCA by virtue of the aforementioned provision of the Lands Act, irrespective of whether his employment status falls within the definition of "maritime employment". However, the parties have not discussed the Lands Act in their briefs and the information provided in the pleadings is insufficient to allow the Court to resolve this issue. Accordingly, this Court will reserve its opinion on this issue until it has been properly briefed.

### 3. *Champlin Petroleum's Cross–Claim*

Gator Hawk has also moved for summary judgment on the cross-claim filed by Defendant Champlin, on the grounds that the relief sought in the cross-claim is barred by §§ 5(a) and 5(b) of the LHWCA. 33 U.S.C. § 905(a) and (b).

Since the issue of whether the Plaintiff is entitled to benefits under the LHWCA is undecided, a decision on whether the LHWCA bars Champlin's cross-claim would be premature.

### IV. CONCLUSION

For the reasons stated above, this Court is of the opinion that summary judgment

should be granted dismissing the claims made by the Plaintiff under the Jones Act, 46 U.S.C.App. 688, for lack of Jones Act seaman status. Further, this Court is of the opinion that a decision on Gator Hawk's other summary judgment issues is premature at this time. It is therefore,

ORDERED that summary judgment is granted for Gator Hawk on the issue of Jones Act seaman status and Plaintiff's claims under the Jones Act, 46 U.S.C.App. § 688, are hereby dismissed.