**Marc DEAN, Plaintiff,**

v.

**McKIE COMPANY, Defendant/Third Party Plaintiff,**

v.

**BURLINGTON CRANE SERVICES, INC., Third Party Defendant.**

Civ. A. No. 89–0845–N.

United States District Court, D. Massachusetts.

Aug. 30, 1991.

Arthur P. Skarmeas, Joseph R. Donohue, Latti Associates, Boston, Mass., for Marc Dean.

Robert E. Collins, Clinton & Muzyka, Boston, Mass., for McKie Co.

John J. Cogavin, Cogavin & Waystack, Boston, Mass., for Burlington Crane Services, Inc.

## MEMORANDUM AND ORDER ON DEFENDANT/THIRD–PARTY PLAINTIFF, McKIE COMPANIES' [sic] MOTION FOR SUMMARY JUDGMENT (# 49, filed 5/1/91)

ROBERT B. COLLINGS, United States Magistrate Judge.

### INTRODUCTION

The case is presently before the Court on the defendant's motion for summary judgment; all parties have consented to the referral of the motion to me for final decision pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the motion to me in accordance with the parties' consent.

### STATEMENT OF THE CASE

This is an action brought by plaintiff, Marc Dean (hereinafter, "Dean"), against his employer, McKie Co., (hereinafter, "McKie"), for personal injuries arising out of an injuries Dean received on February 9, 1988. The suit contains two counts. Count I asserts a cause of action under the Jones Act, 46 U.S.C. § 688 *et seq.* Count II claims liability under the Longshoremen's and Harbor Workers' Compensation Act, (LHWCA), 33 U.S.C. § 905(b). After completion of discovery by all parties, McKie has filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on both counts. Dean opposes the entry of summary judgment only with respect to Count I, the Jones Act claim.

### COUNT I: JONES ACT CLAIM

#### A. ISSUE PRESENTED

The issue presented with respect to Count I is whether Dean has presented sufficient evidence to raise a genuine issue

at trial that, at the time of the incident on February 9, 1988, he was a "seaman" as defined in the Jones Act, and, therefore, entitled to maintain an action for damages under that Act.

### B. SUMMARY JUDGMENT

■■■ Rule 56, Fed.R.Civ.P., provides for the entry of summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In determining whether a factual issue exists, the trial court must examine all underlying facts and evidence in the light most favorable to the opposing party, in this case, Dean. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, where the non-moving party bears the burden of proof on an issue for which summary judgment is sought, that party must oppose the motion with admissible evidence on the issue in order to defeat the summary judgment motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In the present case, Dean has the burden to establish seaman status. *Bach v. Trident Steamship Co., Inc., et al.,* 920 F.2d 322, 324 (5th Cir.1991), *cert. granted, vacated* and *remanded* (for further consideration in light of *McDermott International, Inc. v. Wilander,* 498 U.S. ——, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)) —— U.S. ——, 111 S.Ct. 2253, 114 L.Ed.2d 706 (1991). *See also Lormand v. Superior Oil Company,* 845 F.2d 536, 539 (5th Cir.1987).

### C. STATEMENT OF FACTS

The historical facts are not in substantial dispute. McKie, Dean's employer, was a subcontractor at the Charles River Project, a project which entailed laying new pipes across the Charles River between Boston and Cambridge. McKie's task was to remove a stone wall, located below an underwater pile platform, cut out the platform, remove the wood piles, drive H-beams, lay the pipe across the river, and then cover the new pipe with stone. (Def.'s Memo [# 50] at p. 2 citing depo. of Leo Farrell at pp. 12–14).

In order to accomplish these tasks, McKie, at the commencement of the project in December 1987, employed the use of a barge, designated as Barge 387, which was approximately 30' wide by 100' long.[1] The barge was transported by Dean and others to the site by use of a tug. The barge served several purposes. It was equipped with a Manitowac crane which was operated from the barge (Plaintiff's depo. pp. 37, 39–40; Farrell's depo., pp. 10, 16) and was used to remove the old stone wall and old wooden piles and pile caps and to assist in driving the new piles. In addition to housing the crane, the barge was also used as a place for the workers to eat meals, to take shelter from the elements, to change clothes, and to get into and out of their diving gear. (Plaintiff's depo. pp. 41, 42; McGroarty's depo. p. 41; Desantis' depo. at pp. 38–39). Blue prints, materials, tools, diving gear, and other equipment were stored on the barge. Lastly, the divers dived off from the barge in order to get to the underwater areas where the worked was to be performed. (McGroarty's depo. p. 41).

Dean had previously worked for McKie on other projects as a worker/deck hand; for the Charles River project McKie hired him as a diver and diver foreman (Plain-

---

1. It is important to note that McKie is not contesting Dean's claim under the Jones Act on the grounds that the barge was not a "vessel". The "vessel" requirement is a prerequisite to Jones Act jurisdiction. *DiGiovanni v. Traylor Brothers,* (1st Cir., No. 90–1957 4/17/91). *DiGiovanni* involved a spud barge operating in circumstances similar to the barge at use in the instant case. In *DiGiovanni,* the First Circuit, following the precedent of *Bennett v. Perini Corp.,* 510 F.2d 114 (1st Cir.1975), found that the barge constituted a "vessel" for purposes of the Jones Act. However, in *DiGiovanni,* the Court noted the narrower definition of "vessel" employed by the Fifth Circuit, *Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290, 292 (5th Cir.1990), and declined to follow the *Gremillion* test. On the present state of the law in this circuit, there is no *bona fide* claim that Barge 387 was not a vessel. However, it is noted that a petition for rehearing has been filed in the *DiGiovanni* case. Should the First Circuit, upon rehearing, adopt the *Gremillion* test, the question of whether Barge 387 was a "vessel" would be a matter of genuine legal and factual dispute.

tiff's depo. pp. 37, 43; Farrell's depo. pp. 28–30; Desantis' depo. pp. 41–42; McGroarty's depo. pp. 16, 41) and also as a pile driver. (McGroarty's depo. p. 15). Dean was paid at different pay rates depending on whether he performed work as a diver or worked as a pile driver. Dean alleges that the majority of his work for McKie was spent performing underwater diving directly off the barge. In addition to diving, supervising, and pile driving, Dean had other responsibilities. Throughout the course of his job, Barge 387 needed to be moved in order to facilitate the diving or to make it easier for the crane operator to pick up items and to do other work. The barge was moved by use of the barge's lines and by manually tugging and pushing off the sea wall or by using winches. At various times, Dean would make the decision to move the barge, and when the barge was being moved, he would be in charge. (Plaintiff's depo. p. 55; McGroarty's depo. p. 26). As of February 9, 1988, the barge was moved approximately five to six times. (McGroarty's depo. p. 26). Dean's other duties included handling the lines on the barge, securing the barges, tying the lines up when the barge was on location (after being tugged to the point by tug boat), checking for the depth of the water to make sure the barge was in a safe spot, checking for leaks and performing other necessary maintenance on the barge. (Plaintiff's depo. pp. 41–42; Desantis' depo. p. 41). As Mr. McGroarty put it at his deposition, "[Dean] was the one that would tell you what to do and tell the crane operator what to do." (McGroarty's depo. p. 26). Although the crane was not used every day and divers did not dive every day, the barge itself was in use every day on the project.

From the first few days of the project in December, 1987 up until just before the accident on February 9, 1988, Dean had been working on the sea wall. (Plaintiff's depo. p. 49). To do the underwater work, he would dive either directly off the barge or off the shore. (Desantis' depo. p. 41). While underwater, he would remove some of the wall and cut out the existing decking, cut out and remove the existing pile caps, and cut out and remove all the existing wood piles. (McGroarty's depo. p. 16). Then Dean and his co-workers would dismantle the sea wall and start digging a trench behind the sea wall until they came to a wooden platform built under the earth, which they would cut out and pull, and remove the piles. The next step was to drive in steel sheets (Z sheets) to serve as sides for the trench. After the sheets were driven, Dean assisted in installing new piles. (Plaintiff's depo. pp. 43–44). When the crane was used to remove the old wooden piles, the divers would dive directly off the barge. (McGroarty's depo. p. 41)

Dean's injury on February 9, 1988 occurred when some of the new piles were being installed. (Plaintiff's depo. p. 44). He had not been diving that day. On January 28, 1988, McKie had leased an 82 ton land-based crane from the Third Party Defendant Burlington Crane Services, Inc. (Exh. B. pp. 30–31). The reason for the lease of the land-based crane was that the Manitowac crane on the barge could not reach the piles being driven at that time. (Desantis' depo. p. 13; McGroarty's depo. p. 20). On February 9th, the crew was in the process of driving/drilling some "batter" piles (driven at an angle) in the area where the crane on the barge could not reach. Dean was standing on some falsework several feet inland on the Cambridge side of the Charles River. During the process of digging a trench and driving the batter piles, Dean was struck on his left minor hand by a falling cheek plate from the block, an ancillary piece of equipment used with the crane, from which the vibratory hammer was suspended. (Farrell's depo. pp. 36–7; McGroarty's depo. p. 36). As a result, Dean suffered injuries to his hand and other damages. It is uncontested that Dean was injured during the course of his employment.

### D. SEAMAN STATUS: LEGAL STANDARD APPLICABLE

Title 46, U.S.C. § 688 of the Jones Act provides, in pertinent part:

Any seaman who shall suffer personal injury in the course of his employment

may maintain an action for damages at law.

The issue of what constitutes a "seaman" under this provision has been the subject of considerable litigation. In the past, some courts followed a narrow interpretation and held that in order to be considered a "seaman" for purposes of the Jones Act, a person must "aid in navigation" of the vessel. *Johnson v. John F. Beasley Construction Co.*, 742 F.2d 1054 (7th Cir.1984), *cert. denied* 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985). Other courts adopted a broader interpretation, holding that in order to be a "seaman" for purposes of the Jones Act, a person must be permanently assigned to a vessel or perform a substantial amount of work on a vessel and the work must contribute to the function of a vessel or the accomplishment of its mission. *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir.1959).

However, in February of this year, the Supreme Court clarified the standard considerably. In the case of *McDermott International Inc. v. Wilander*, 498 U.S. ——, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991), the Supreme Court, in an opinion by Justice O'Connor, traced the history of the interpretation of "seaman" status and the interrelationship of the Jones Act with the LHWCA, which provides for recovery for injury to various land-based maritime workers but excludes coverage for a "master or member of the crew of any vessel." 33 U.S.C. § 902(3)(G). The Court explained that, in the past, inconsistent use by various courts of the "aid in navigation" requirement caused confusion and a lack of uniformity in the LHWCA and Jones Act cases. However, the Court stated it is now recognized that the Jones Act and the LHWCA are mutually exclusive, such that a "seaman" under the Jones Act is the same as "master or member of a crew of any vessel" under the LHWCA. *McDermott International Inc. v. Wilander, supra*, 111 S.Ct. at 816–17. Thus, the Court rejected the "aid in navigation" rule and held that one need not "aid in navigation" or contribute to the transportation of the vessel in order to qualify as a "seaman"

under the Jones Act. *Id.* at 817. Rather, the Court expressly adopted the Fifth Circuit's interpretation of the standard to be applied in determining seaman status set forth in the case of *Offshore Co. v. Robison, supra.*

After the *McDermott International* case was decided, the First Circuit Court of Appeals in *DiGiovanni v. Traylor Brothers, Inc.*, (No. 90–1957, 1 Cir., April 17, 1991) applied the test set out in *Robison* and later applied in the case of *Barrett v. Chevron USA, Inc. E.B.B. Co.*, 781 F.2d 1067, 1072 (5th Cir.1986). Other courts have as well. *Palmer v. Fayard Moving and Transportation Corp.*, 930 F.2d 437 (5th Cir.1991).

In light of the above, it is eminently clear that the proper legal standard which must be applied in this case in deciding the McKie's motion and determining whether a jury question is presented as to seaman status is that set forth in *Robison* as follows:

> [T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

*Robison, supra*, 266 F.2d at 779 quoted in *Barrett, supra*, 781 F.2d at 1072. The first part of the test in part (1) above is disjunctive, meaning that the employee may qualify for seaman status even though he is not permanently assigned to a vessel, so long as he can show he performed substantial work on the vessel. *Lormand v. Superior Oil Co., supra*, 845 F.2d at 540; *Gates v. Delta Offshore*, 715 F.Supp. 160, 162 (W.D.La.1989) citing *Barrett, supra*,

781 F.2d at 1073. Under the *Robison* test, the question of seaman status depends in large part on the facts and circumstances of the particular case. As the Supreme Court wrote in *McDermott International Inc. v. Wilander, supra,* 111 S.Ct. at 818, "[t]he inquiry into seaman status is of necessity fact-specific; it will depend on the nature of the vessel, and the employee's precise relation to it" citing *Desper v. Starved Rock Ferry Co.,* 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952).

■ It is clear that the situs of the injury is not the determining factor in establishing Jones Act liability; it is not even necessary for the injury to have occurred aboard a vessel. *See O'Donnell v. Great Lakes Dredge and Dock Co.,* 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943). *See Wallace v. Oceaneering International,* 727 F.2d 427, 435 (5th Cir.1984) in which the Court noted that in *Bertrand v. International Mooring & Marine,* 700 F.2d 240 (5th Cir.1983), it had held that workers who spent a large majority of their time on vessels performing maritime tasks who were killed in an auto accident on land, were still "seamen" under the Jones Act.

However, factors which courts have looked at in applying the test have included (1) the duration of employment and (2) the nature of the employee's assignment. *Lormand v. Superior Oil Co., supra,* 845 F.2d at 540; *Barrett v. Chevron, USA, Inc. E.B.B. Co.,* 781 F.2d at 1073. In looking at the nature of the employee's duties, courts have held that where a worker's "regularly assigned duties require him to divide his time between vessel and land (or platform), his status is to be determined in the context of his *entire* employment with this current employer." (emphasis added) *Lormand, supra,* 845 F.2d at 540 quoting *Barrett, supra,* 781 F.2d at 1075; *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342, 1347 (5th Cir.1980); *Palmer v. Fayard Moving and Transportation Corp., supra,* 930 F.2d at 439; *Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 533 (5th Cir.1986); *Bertrand v. International Mooring & Marine, Inc., supra,* 700 F.2d at 247 (5th Cir.1983).

As a general proposition, and in the present case, this is the rule to be applied. It is only when the employee's job assignment becomes permanently changed during the course of his employment that the employee is entitled to have the question of the "substantiality" of his vessel-related work assessed on the basis of a particular time period rather than on an assessment of the entire term of employment by that employer. *Lormand v. Superior Oil Co., supra,* 845 F.2d at 540. Recent decisions have focused on whether the worker was *primarily* employed as a land-based worker or as a worker aboard a vessel and have expressed the result in terms of percentages or calculations of hours and days worked. *See e.g. Palmer v. Fayard Moving and Transportation Corp., supra,* 930 F.2d at 439 (holding that where land-based public relations agent for vessel owner spent only 19% of working hours on board the vessel and the rest of the time on land, vessel-related work performed could not be considered "substantial" and therefore agent was not a "seaman"). *Lormand, supra,* 845 F.2d at 541 (affirming grant of summary judgment on the basis that because the injured welder spent only 14% of his work activity aboard vessels during a 34 month period of employment, there was insufficient evidence to support submission of question of seaman status to the jury). With respect to work activity performed on the vessel, the Fifth Circuit in the case of *Barrett v. Chevron, USA, E.B.B. Co., supra,* 781 F.2d at 1074, held that in order to pass the first part of the *Robison* test, a significant part of the claimant's work must be performed aboard the vessel and this work must have at least some degree of regularity and continuity. Despite the requirement that the work be performed "aboard" the vessel, it is recognized that work as a commercial diver would satisfy that requirement because a commercial diver incurs a high degree of exposure to the hazards or perils of the sea and there is an inherently maritime nature of the tasks performed. *Wallace v. Oceaneering International, supra,* 727 F.2d at 436.

With regard to the second prong of the *Robison* test, courts have broadly con-

strued the requirement that the employee's duties must contribute to the function of the vessel or the accomplishment of its purpose. *See e.g. Craig v. M/V Peacock On Complaint Of Edwards,* 760 F.2d 953, 961 (9th Cir.1985) citing *Bullis v. Twentieth Century Fox Films Corp.,* 474 F.2d 392, 394 n. 10 (9th Cir.1973) (wherein the court noted it might be conceivable for an actor, bartender or musician aboard a vessel to qualify for seaman status, where for instance, a cruise ship advertised a Shakespearean festival en route, then the festival actors might be considered seaman since they contribute to the function of the vessel or to the accomplishment of its mission).

### E. SEAMAN STATUS: MIXED QUESTION OF LAW AND FACT

■ As stated previously, the *Robison* test is the proper legal standard which must be applied in determining the issue of seaman status, and the application of the standard will depend largely on the specific facts and circumstances of the particular case. Because the decision will depend most often on the findings or interpretation of facts, the issue of seaman status has generally been held to be a question for the jury to decide. In *Barrett v. Chevron, USA, E.B.B. Co., supra,* 781 F.2d at 1072, the court stated:

> ... except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts.

*Id.* citing *Offshore Co. v. Robison, supra,* 266 F.2d at 779–80. The court in *Barrett* further stated that:

> ... seaman status is generally a question for the jury and should be left for the jury's determination even when the claim to seaman status appears relatively marginal. Status should be decided as a question of fact, and not by summary judgment unless there is no genuine dispute of material facts, and the uncontro-

verted facts inescapably determine status as a matter of law....

> ... [seaman] status may be determined by summary judgment in the appropriate situation ... where facts establish beyond question as a matter of law [the lack of seaman status] ... a court ... may, in the proper case, hold that there is no reasonable evidentiary basis to support a jury finding that the injured person is a seaman....

*Barrett v. Chevron, USA, E.B.B. Co., supra,* 781 F.2d at 1078.

In *McDermott International, Inc. v. Wilander, supra,* 111 S.Ct. at 818, the Supreme Court held that the question of "seaman" status is more properly characterized as a mixed question of law and fact, rather than a pure question of fact for the jury. The court must define the legal standard to be applied, and the jury then finds the facts and applies that standard to the facts as found. Thus, the first step in the summary judgment context is the court's determination whether, as a matter of law, there is a reasonable evidentiary basis for an inference in favor of the plaintiff. Put another way, the court must determine whether the facts and law will reasonably support only one conclusion—i.e. that the employee is not a seaman, or whether reasonable minds could differ as to whether the employee qualifies for seaman status. If the court determines the former, summary judgment must be granted. If the court determines the latter, then the issue must go to the jury and summary judgment must be denied. As the Supreme Court wrote in the case of *McDermott International, Inc. v. Wilander, supra,* 111 S.Ct. at 818.

> If reasonable persons, applying the proper legal standard, could differ as to whether the employee was a "member of a crew," it is a question for the jury.

*Id.*

### F. ANALYSIS

■ In light of the above, an examination into the facts presented is mandated. At the outset it is noted that there is, for the most part, no dispute among the parties as to the facts of the case. What is

highly disputed are the characterizations and inferences which can be made from the facts. McKie's only contention is that Dean cannot be considered a seaman under the Jones Act and is therefore not entitled to maintain this action. McKie argues that, applying the *Robison* test, Dean was not permanently assigned to a vessel, nor did he perform substantial work on the vessel, and even if he did, he was not performing work which contributed to the function of the vessel or the accomplishment of its mission. McKie places emphasis on the fact that on the day on which Dean was injured, the vessel was not used or employed in any material way, and, since Dean was not using the barge or the crane on the barge, his responsibilities as a pile driver on the falsework did not in any way contribute to the function of the vessel or the accomplishment of its purpose. McKie argues that there is a clear distinction between land-based and sea-based maritime workers, and at the time of the injury, Dean was a land-based worker, not entitled to the benefits of the Jones Act.

McKie concedes that while Dean was working as a diver, he might have been considered a seaman but argues that when Dean was working as a pile driver, he could not be considered a seaman. McKie notes the fact that Dean was paid at two different rates depending upon whether he was working as a diver or as a pile driver. McKie also asserts that Dean's status as diver and his assumption of certain deckhand duties is insufficient to render him a "seaman" *per se.* Since Dean did not sleep on the barge and would sometimes dive off the land, he was a land-based employee. McKie suggests the occasional assistance in moving the vessel was incidental to his employment as a diver and pile driver, and that Dean could not be considered as permanently assigned to the vessel or performing substantial work aboard the vessel. McKie also relies on its contention that at the time of injury, Dean was driving batter piles and was not performing work which contributed to the barge or to the accomplishment of its mission. In its reply brief, McKie further argues that the determination of the "substantiality" of Dean's

vessel-related work should be made on the basis of his activities in his job as pile driver, and not as diver, relying on the *Barrett* case.

However, as the foregoing discussions have demonstrated, this is clearly not the standard to be applied. It is only in instances where an employee is given a new work assignment before his accident in which either his essential duties or his work location is *permanently* changed that the matter is determined on the basis of what the employee was doing at the time of injury. In this case, there is no contention nor is there any evidence presented, that Dean's work assignment or work location had permanently changed or that he was no longer hired as a diver or diving foreman. In fact, inferences can be made just the other way—i.e. that this job as pile driver on the falsework was only *temporary* and that the defendant's *primary* job was to be a diver and diver foreman. This is suggested from the fact that the Burlington crane was only rented by McKie because the Manitowac crane located on the barge could not reach the certain ares where the crew needed to drive piles. Additionally, the barge continued to be in use at all relevant times, as a place for storage, etc. Further, deposition testimony reveals that the Burlington crane was only rented for a short period of time (14 or 17 days) (Farrell's depo. pp. 73–74), and the crane on the barge was intended to be used after the Burlington Crane had completed the work which the crane on the barge could not do. In this connection, it is noted that the Charles River Project was not completed until April or May, 1988. (McGroarty's depo. p. 22).

In response to McKie's arguments, Dean argues that whether he is a seaman is a question for the jury because reasonable minds could differ as to his status. He contends that he has presented sufficient evidence to satisfy the *Robison* test because, when examining the entire circumstances of his employment, it is clear that he performed a substantial amount of work aboard the vessel. Dean notes that the majority of the work he performed prior to

the incident involved underwater diving, which was usually performed directly off the barge, or supervising the other divers diving off the barge. Additionally, there is testimony that Dean was involved in the handling of vessel lines and other deckhand responsibilities such as checking leaks and moving the barge to different areas of the job site. (Plaintiff's depo. pp. 41–2, 48–9). Dean also used the barge to eat meals, get out of the elements, and to store diving equipment and to change in and out of diving gear or change clothes. He contends he would not have been able to carry on his duties on behalf of McKie if he did not have the barge at the site.

Dean also asserts that he has met the second prong of the *Robison* test in that he has produced sufficient evidence upon which the jury could determine that he contributed to the function of the vessel and to the accomplishment of its mission. The function of the barge was to assist in removing the old stone wall, platform and pilings and to assist the installation of new pilings, platform and pipe. Dean's duties in maintaining the barge, moving the barge, and diving from the barge, as well as duties as a pile driver, all contributed to that function and the vessel's mission.

In my opinion, the case of *Barrett v. Chevron, USA, E.B.B. Co., supra,* 781 F.2d at 1078, controls the outcome of McKie's motion. Under *Barrett,* unless there was a permanent change of duty, what Dean was doing at the time of his injury is not determinative. The evidence does not suggest a permanent change of duty. McKie in its papers seems to infer that at the time the Burlington Crane was being used, all the work which was done with the barge crane and all of the diving from the barge was over because that portion of the work which was done underwater had been completed and all that was involved thereafter was laying the pipe inland for a certain distance on the Cambridge side. However, I can find no evidentiary support for this proposition. If it were true, McKie might have a strong argument that the nature of Dean's work had permanently changed from that of a diver or diver foreman working off the barge to

a land-based pile driver. But the evidence is simply not there. Rather, the evidence suggests that after the work for which the Burlington crane was needed was completed, Dean and his co-workers went back to work as divers off of the barge. (McGroary's depo. p. 16). And if that is the case, the *Barrett* case plainly teaches that a temporary change in a work assignment during which the injury takes place does not defeat the injured worker's status as a seaman if, in total, his duties render him a seaman.

I admit that in this case, the employees' injury occurred when he was driving piles on land, and that fact distinguishes this case from the *DiGiovanni* and *Bennett* cases. In *DiGiovanni,* the "vessels" were a "spud" barge named the "Betty F" and an adjoining supply barge used in connection with the Jamestown, Rhode Island bridge project. DiGiovanni was a pile driver on the project. His injury occurred while he was handling tag lines aboard the supply barge. *DiGiovanni v. Traylor Brothers, Inc., supra,* at pp. 4–5. In *Bennett,* the employee was a carpenter who worked on the wooden frames into which cement was poured in order to form piers for the Newport–Jamestown bridge. The "vessel" was a "Scow 101," a barge on which a crane was situated and which was used to aid in the bridge construction. The employee was working on a wooden frame when he fell off of the concrete pier onto the barge. The Court wrote:

> [T]he mission of Scow 101 was to provide a support base for the construction of the bridge piers. [The employee's] duties, if not obviously maritime, related to that function and were arguably essential for its satisfactory performance. We are satisfied on this record plaintiff is entitled to have the question decided by a jury.

*Bennett v. Perini Corp., supra,* 510 F.2d 114 at 114 (1st Cir.1975).

In sum, there is an evidentiary basis upon which a jury could find that Dean met each of the two prongs of the *Robison* test, i.e. that there is evidence that Dean "performed a substantial portion of his work"

on the vessel and that he "contributed to the function of [Barge 387] or to the accomplishment of its mission or to [its] operation or welfare ... during its movement or during anchorage ...". *Offshore Company v. Robison, supra,* 266 F.2d at 779 as quoted in *Bennett v. Perini Corporation, supra,* 510 F.2d at 116.

"The issue [of seaman status] is to be left to the jury even when the claim to seaman status appears to be relatively marginal." *Wallace v. Oceaneering International, supra,* 727 F.2d at 432 (citations omitted). While I do not necessarily believe that on the record before me, Dean's claim to seaman status is marginal, there is certainly room for a greater development of the facts at trial. In addition to the point I have referred to, i.e. whether the diving work had been completed at the time of the accident, there is nothing in the record to indicate how many days Dean was paid as a pile driver and how many days he was paid in various diving capacities. The denial of the motion for summary judgment is obviously without prejudice to the filing of a motion for directed verdict at the close of Dean's case-in-chief at trial if a fuller development of the facts reveals that Dean has failed to prove his entitlement to "seaman" status.

## COUNT II: LHWCA CLAIM

McKie Co., has moved to dismiss Count II of the Complaint which alleges a violation of section 905(b) of the Longshoremen's Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b). Under § 905(b), a claimant may sue vessel operators whose negligence caused their injury. That section provides:

In the event of injury to a person covered under this Chapter caused by the negligence of a vessel, then such person or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel, as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator or charterer) or against the employees of the employer. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

 Under this section, where the employer is also the vessel owner, the claimant may sue the employer in its capacity as the vessel owner. *Reed v. The Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). In *Scindia Steam Navigation Co. Ltd. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) the Supreme Court defined the duty owed by the vessel owner to longshoremen. Briefly, this duty is to use reasonable care to have the ship and the equipment in such condition that the stevedore is able to carry on the cargo operation in reasonable safety and with reasonable safety to persons or property; to warn of hidden dangers which are known or which should have been known to the shipowner; to intervene and repair ship's gear where a danger may arise from gear malfunctioning after operations have commenced if the shipowner becomes aware of a danger or that the stevedore is acting unreasonably in failing to protect longshoremen against danger. There is no general duty to supervise or inspect the work areas assigned to the stevedore. The *Scindia* rules have been applied to claims of persons other than stevedores.

■ In order to hold the vessel owner liable, there must be some condition of the vessel that caused or contributed to the plaintiff's injury. Moreover, the language of section 905(b) itself makes this clear: "In the event of injury to a person ... *caused by the negligence of a vessel ...*" (emphasis added).

■ In the present case, it is uncontested that the vessel, Barge 387, was not involved in any manner with the Dean's injury. Dean has presented no evidence whatsoever that would show any nexus between his injury and the condition of the vessel from which negligence could be reasonably alleged. At the time of the accident, Dean was not aboard the vessel and was not using the vessel in any way. Therefore, the vessel cannot be seen as causing or contributing, or in any way remotely connected, to his injury such that McKie could be held liable under LHWCA.

I assume that Dean now realizes this. As noted, in his Limited Opposition ... [the] Motion for Summary Judgment (# 52), Dean does not contest McKie's assertions as to this claim and expressly states the motion for summary judgment is not opposed as to Count II.

## CONCLUSION

Accordingly, it is ORDERED that Defendant/Third–Party Plaintiff, McKie Companies' Motion For Summary Judgment (# 49) be, and the same hereby is, ALLOWED as to Count II and DENIED as to Count I.